WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark William Kelly, | No. CV-23-00068-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Sean P Gallagher, et al., | |
| Defendants. | |

The Court grants Defendant Jansen's Motion for Judgment on the Pleadings for the reasons explained below.

I. **Background**

On February 7, 2023, Plaintiff filed this action, the first in a series of three currently pending cases, involving allegations of constitutional violations related to actions taken by private and state actors in response to Plaintiff's video recording and livestreaming activity occurring on a property owned and under construction by Richmond American Construction that allegedly flooded Plaintiff's property. In this case, Plaintiff alleges that on July 29, 2021, Defendants detained him, threatened him with arrest, and forced him to leave a public sidewalk in violation of his rights under the First, Fourth, and Fourteenth Amendments. The Court refers to this action as the sidewalk case.[1]

---

[1] In CV 23-349 TUC CKJ, Plaintiff alleges that he was illegally arrested on July 30, 2021, for refusing to identify himself when Defendants confronted him because he was on his neighbor's property video recording flooding. In CV 24-01 TUC-CKJ, Plaintiff alleges his constitutional rights were violated because he was arrested for trespassing on private property when he was in a vehicle parked in a public easement while recording and livestreaming flooding on January 18, 2022.

In this action, Plaintiff sued the Pima County Sheriff Department ("PCSD") Deputies Sean P. Gallagher and Alex P. Jansen, PCSD Sergeant Edward C. Curtain, and Pima County legal advisor Sean Holguin. On November 13, 2023, the Court granted motions to dismiss in favor of Defendants Curtain and Holguin without prejudice and dismissed the official capacity claim against Defendant Jansen. (Order (Doc. 22)). On January 10, 2024, the Court held a scheduling conference, directed the parties to preliminarily conduct discovery but did not issue a case management scheduling order. The Joint Case Management Report reflected that Defendant Jansen intended to file a dispositive motion based on qualified immunity. (Joint Case Management Report (Doc. 29) at 4.) On May 30, 2024, Jansen, the only remaining Defendant, filed a Motion for Judgment on the Pleadings raising the defense of qualified immunity. After delays resulting from Plaintiff's request to amend the Complaint, instead of filing a Response, Plaintiff sought and was granted recusal by Judge Martinez, and the three cases were randomly transferred to this Court.

The Response and Reply to the Motion for Judgment on the Pleadings have been filed and the motion was ripe for disposition. On January 27, 2025, the Court paused disposition to allow the parties to attempt a universal settlement of all the cases. On February 24, 2025, the settlement judge filed a Minute Entry that a settlement was not reached. (Minute Entry (Doc. 74)). Accordingly, the Court rules on the Motion for Judgment on the Pleadings.

**II.     Motion for Judgment on the Pleadings**

The Defendant's Motion for Judgment on the Pleadings relies on the following alleged facts:

> The Complaint alleges that on or about July 29, 2021, at approximately 3:30 p.m. at the intersection of E. Hearon St. & Ryscott Circle in Pima County, Plaintiff was "unlawfully trespassed from a public sidewalk while exercising [his] 1st amendment rights" and "left after threat of arrest." [Doc. 1, Section III(C).] "Richmond American Construction called 911 and asked the sheriff to have me trespassed from the sidewalk." [Id.]. Plaintiff alleges he was "lawfully present on a public sidewalk" and "filming the natural surroundings, including recent flooding in the area that had negatively affected [his] property." [Doc. 1, ¶ 11-12.] "Defendant Deputies Sean P. Gallagher and Alex P. Jansen were called to the scene by Richmond

- 2 -

> American Construction who falsely claimed that the public sidewalk was private property and requested that Plaintiff be removed." [Doc. 1, ¶ 13]. Defendant Sean P. Gallagher and Alex P. Jansen then "illegally detained, threatened Plaintiff with arrest, and forced Plaintiff to leave the area solely based on RICHMOND AMERICAN CONSTRUCTION's false claim that the sidewalk was private property." [Doc. 1, ¶ 14]. The Complaint further alleges that Defendant Pima County attorney SEAN HOLGUIN, the legal advisor hired by Pima County, "was contacted and represented the sidewalk was private property…" [Doc. 1, Complaint, ¶ 4, 10, 15]. The Complaint further alleges that "[t]he sidewalk was in fact a public sidewalk, and Plaintiff had a constitutional right to be present and film the natural surroundings." [Doc. 1, Complaint, ¶ 16]. The Complaint alleges that "as a result of Defendants' actions, Plaintiff's rights under the First, Fourth and Fourteenth Amendment were violated." [Doc. 1, Complaint, ¶ 5].

(Motion for Judgment on the Pleadings (MJP (Doc. 43) at 1) (emphasis added). Based on these allegations, Defendant Jansen asserts qualified immunity from any liability for any alleged constitutional claims.

In Response, Plaintiff argues that the Complaint "clearly and sufficiently articulate[s] claims under the First, Fourth, and Fourteenth Amendments, and submits the Defendant's motion is riddled with contradictions, unsupported assumptions, and a glaring failure to address critical disputes of material fact. Plaintiff submits that disputed facts exist precluding a judgment on the pleadings as follows:

1. Mr. Kelly was lawfully present on a public sidewalk and road on July 29, 2021, filming natural surroundings and flood damage. [*See* (Response, Exhibit 4: Jansen's Initial Disclosure Statement (Doc. 63) at 31-32 (explaining status of the road as public but privately maintained at the time of the incident).

2. "Richmond American Construction falsely claimed Mr. Kelly was harassing the 13 employees, but subsequently changed the complaint to a false claim of trespass 14 (Exhibit 1, Incident Report No. 210729179, Page 1, indicating "Harassment" as the nature of the call).

3. Deputy Jansen acted on these unverified claims, asserting without evidence that the road was private and threatening Mr. Kelly with arrest unless he left (Exhibit 1, Incident Report No. 210729179, Page 6, Paragraph 1).

4. At 1:29:03 PM, Richmond American Construction reported a "harassment" complaint—not trespassing—against Mr. Kelly. Yet, by 2:31:48 PM. Over an hour later, Sergeant Curtain hastily emailed the county road department seeking clarification on the road's ownership (Exhibit 2, Sgt. Curtain's email, Page 1, Paragraph 1).

5. Defendant failed to provide all relevant documents ordered by the Court (Exhibit 3, Court docket, Page 1, Doc 32) and only produced a critical

      email (June 19, 2024 (Exhibit 2, Sgt. Curtains email, Page 1. Paragraph 1) (Exhibit 5, Christi Padilla's email, Page 1, Paragraph 1) only after filing their Motion for Judgment on the Pleadings, (May 30, 2024) making it approx. 3 weeks after defense filed their motion. This email disclosed by the defense weeks after filing their motion, reveals that neither the deputies nor the Sheriff's Department had verified the road's status at the time of Mr. Kelly's removal.

6. The Sheriff's Department legal counsel, Sean Holguin, merely "backed up" the developer's unverified assertion without any legal or factual basis as admitted in defendant Jansen's own narrative (Exhibit 1, Incident Report No. 210729179, Page 5, Paragraph 5).

(Response (Doc. 63) at 2-3.)

      The Federal Rules of Civil Procedure 12(c), 12(b)(6), and 8(a) work in tandem. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rule 8(a)(2) provides that to state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that," among other things, "his adversary can discern what he is claiming and frame a responsive pleading" and "the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citation omitted). As is evident from the Defendant's ability to frame his defense, the Plaintiff's Complaint satisfies Rule 8. Defendant asks the Court to determine that the facts supporting Plaintiff's claims, as a matter of law, require the Court to grant him qualified immunity.

      Defendant Jansen objects to the evidence of alleged disputed facts relied on by the Plaintiff because it is outside the pleadings and may not properly be considered when ruling on a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c), and also because it lacks proper foundation. Defendant argues that "the Court must take the Plaintiff's allegations in the Complaint as true in evaluating whether a motion for judgment on the

- 4 -

pleadings should be granted." (Reply (Doc. 67) at 2.) Defendant Jansen asks the Court to strike or disregard Plaintiff's arguments concerning the alleged factual evidence outlined in the Response and noted above. In the event the Court elects to consider extrinsic matters outside the pleadings, Defendant Jansen asserts the motion must be converted to one for summary judgment and requests leave to re-file it as one for summary judgment.

When presented with matters outside the pleadings in connection with a motion to dismiss for failure to state a claim under 12(b)(6) or for judgment on the pleadings under Rule 12(c), the Court may choose to exclude such extrinsic matters and address the motion under applicable Rule 12 standards, or it may convert the motion to a motion for summary judgment under Rule 56. *Jones v. L.A. Central Plaza, LLC*, 74 F. 4th 1053, 1059 (9th Cir. 2023). In this context, the Court considers the extrinsic evidence[2] to determine whether to convert the Rule 12(c) motion into a Rule 56 motion for summary judgment.
In comparison to Rule 56, which requires the nonmoving party to present his evidence, a motion for judgment on the pleadings under Fed. R. Civ. P.12(c) is "functionally identical" to a Rule 12(b)(6) motion to dismiss. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).

If the Court grants a Rule 12(b)(6) motion to dismiss, it grants leave to amend unless deficiencies in the pleading cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Fed. R. Civ. P. 15(a) requires a Court to "freely" grant leave to amend "when justice so requires" absent any "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments ... undue prejudice to the opposing party ... futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 10 76 (9th Cir. 2014) (en banc). An *in forma pauperis*, pro se litigant, like the Plaintiff, should be given an opportunity to amend the complaint to

---

[2] Plaintiff also submitted video evidence in support of his Response to the Motion for Judgment on the Pleadings. (Order (Doc. 70)).

- 5 -

overcome a deficiency unless it is clear that no amendment can cure the defect, *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute*, *Lopez*, 203 F.3d at 1129-1131 (9th Cir. 2000) (determining that a district court retains its discretion to dismiss a pro se prisoner's *in forma pauperis* complaint with or without leave to amend under Prisoner's Litigation Reform Act).

In short, the Rule 12(c) Motion for Judgment on the Pleadings is decided on the strength of the pleadings and the Complaint will be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Put another way, a complaint must state a facially plausible claim for relief, and "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment <u>as a matter of law</u>." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999) (emphasis added), *see also, Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (allegations of the non-moving party accepted as true; allegations of the moving party which have been denied assumed to be false).

Plaintiff submits extrinsic evidence outside the pleadings that includes the deputies' incident reports, a late disclosed email communication with Sgt. Curtain showing an inquiry to the Traffic Unit asking for verification regarding the public/private nature of the sidewalk, verification that arguably never came, and Defendant Jansen's Initial Disclosure Statement admitting the sidewalk was public. The extrinsic evidence submitted by the Plaintiff offers nothing new or necessary to support the claims. The extrinsic evidence is consistent with the claims and facts alleged in the Complaint and arguably goes to show that Richmond American Construction "falsely" said the sidewalk was private property,

and Defendant Jansen contacted Sean Holguin, Pima County's legal advisor, who "backed up" the assertion that the sidewalk was private property; the sidewalk was public, not private property; Defendant Jansen threatened to arrest Plaintiff for trespassing on private property, causing Plaintiff to stop filming the flooding and leave the property. *See Supra* at 1-2 (citing Complaint (Doc. 1) at 11-16.) For example, Plaintiff's extrinsic evidence that Sean Holguin "backed up" Richmond American Construction's false claim of private property is just another way of charging that "<u>SEAN HOLGUIN, the legal advisor hired by Pima County</u>, "was contacted and represented the sidewalk was private property…" *Id.* (quoting Complaint (Doc. 1) ¶¶ 4, 10, 15) (emphasis added). Compare, Defendant Jansen's Initial Disclosure Statement, "It has been determined that the road[3] was public, but privately maintained at the time of the Incident," ((Doc. 63) at 32), with "[t]he sidewalk was in fact a public sidewalk, *supra* at 1-2 (quoting Complaint (Doc. 1) ¶ 16).

At best, the extrinsic evidence goes to the weight of the Plaintiff's claims. *See e.g.* Incident Report (Doc. 63) at 15 (extrinsic evidence that Richmond American Construction's 911 call reported harassment which Defendants subsequently changed to trespass). For example, Plaintiff offers rebuttal evidence to any assertion that responding Deputy Jansen contacted Sgt. Curtin, Traffic Unit, who advised the road is not county maintained at this time and therefore considered private. *Id.* at 19. Plaintiff relies on a July 29, 2021, 2:31 pm email from Officer Curtin reporting that a GIS map shows the road was not county maintained but he could not find anything determining ownership. Plaintiff submits the "email inquiry to the county road department over an hour after the incident was called in" without any evidence of a response from the road department proves nothing. He argues, "[i]f the county's own maintenance department couldn't confirm ownership at the time, how could Deputy Jansen possibly claim otherwise with a straight face?" (Response (Doc. 63) at 5 (relying on Curtin email, Exhibit 2 (Doc. 63) at 23)). Plaintiff asks the Court to conclude: "This sequence of events highlights the absurdity of the defense's claim that the deputies acted on 'verified' information. Instead, it

---

[3] The sidewalk is at issue in this case, but the Court assumes its status was the same as the roads within the Richmond American Homes development.

- 7 -

demonstrates that they took enforcement action without even knowing whether the road was public or private, further exposing the reckless and arbitrary nature of their conduct." *Supra* at 3-4 ¶ 4 (quoting Response (Doc. 63) at 2 ¶ 4.) Weight of the evidence merit arguments, like those made by Plaintiff, are for a jury to consider; the Court does not weigh the evidence on review under either Rule 12 or Rule 56. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 US 133, 150-51 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")

The Court will not convert the Motion for Judgment on the Pleadings to a summary judgment motion to determine whether there are material questions of fact that must be tried by a jury. Instead, the Court determines whether as a matter of law the Complaint states a claim by deciding the question of qualified immunity under the Rule 12(b) standard for the Motion for Judgment on the Pleadings.

### A.   Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law and gives ample room for mistaken judgments. *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986). "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). It is also important, as stressed by the Supreme Court, to resolve immunity questions "at the earliest possible stage in litigation," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), because the driving force behind the immunity is to resolve insubstantial claims against government officials prior to trial and without burdening them with expensive litigation, including discovery, *id.* at 231-232.

The Court is aware that it acts at the confluence of two well-intentioned doctrines, notice pleading and qualified immunity, that give rise to an exercise in legal decision-making based on facts both hypothetical and vague. "On one hand, the federal courts may not dismiss a complaint unless 'it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations . . ..' On the other hand, government officials are entitled to raise the qualified immunity defense immediately, on a motion to dismiss the complaint, to protect against the burdens of discovery and other pre-trial procedures. The qualified immunity issue, in turn, cannot be resolved without first deciding the scope of the constitutional rights at stake." *Wong v. United States*, 373 F.3d 952, 956–57 (9th Cir. 2004) (internal citations omitted). "The unintended consequence of this confluence of procedural doctrines is that the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record, . . .." *Id.*

On the Motion for Judgment on the Pleadings, none of the facts alleged in the Complaint are disputed, all will be accepted as true, and Defendant Jansen's claim of qualified immunity is decided similarly. The question is whether the facts alleged in the Complaint wrap Defendant Jansen in the cloak of qualified immunity. When dismissing a complaint for failure to state a claim based on a qualified immunity defense, the Court balances the competing interests by allowing the case to go forward "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right.'" *Keates v. Koile,* 883 F.3d 1228, 1234 (9th Cir 2018) (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco,* 968 F.2d 865, 872 (9th Cir. 1992)). So, it is enough if the Complaint alleges facts to support a plausible claim that withstands a qualified immunity defense. *See Keates*, 883 F.3d at 1234.

When determining whether a government official is entitled to qualified immunity, the courts consider two different questions: (1) whether the facts taken in the light most favorable to the party asserting the injury, make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533

1  U.S. 194, 201 (2001)); *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 971 (9th Cir.2010) (*en banc*)). The courts may consider the two questions in any logical order. *Pearson v. Callahan*, 555 U.S. at 232.

Here, the focus of the Court's inquiry is on the objective legal reasonableness of the Defendants' acts. *Eng v. Cooley,* 552 F.3d 1062, 1068 (9th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The Court asks whether it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 201.

### 1. Civil Rights Violations: First, Fourth, and Fourteenth Amendments

The Plaintiff's First, Fourth, and Fourteenth Amendment claims, all, involve the same core of alleged facts. Defendant Jansen threatened to arrest Plaintiff for trespass from a public sidewalk while Plaintiff was allegedly exercising his first amendment rights by video recording flooding on an adjacent property. Defendant Jansen acted on the say-so of Richmond American Construction that the sidewalk was private property. Defendant Jansen called Pima County's legal advisor, Sean Holguin, who backed up Richmond American Construction's assertion that the sidewalk was private. Defendant Jansen, without verifying that the sidewalk was private, threatened to arrest the Plaintiff for trespass. Plaintiff's conclusory assertion that he was illegally detained conflicts with the allegation that he left because Defendant threatened to arrest him for trespass. In this way, the First Amendment claim is necessarily premised on the allegedly unconstitutional threat of arrest in violation of the Fourth Amendment. Plaintiff's Fourteenth Amendment due process claim fails because the First and Fourth Amendments provide an explicit textual source of constitutional protection, and Plaintiff must proceed accordingly and not with a more generalized Fourteenth Amendment notion of substantive due process.  (MJP (Doc. 43) at 10; Reply (Doc. 67) at 7 (citations omitted).

In order to state a First Amendment claim, Plaintiff needs only to allege 1) facts showing he engaged in constitutionally protected activity, 2) the government official's adverse actions "would 'chill a person of ordinary firmness' from continuing to engage in the protected activity," and (3) "the protected activity was a substantial motivating factor in the defendant's conduct." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016); *see also O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016); *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2003). For purposes of this Order, the Court assumes that video-recording of flooding on a neighboring property was conduct protected by the First Amendment and that threatening to arrest Plaintiff for trespass would chill a person of ordinary firmness from continuing to film the flooding while occupying a public sidewalk, one of the quintessential recognized public forums protected by the First Amendment. *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 802 (1985) (describing public forums such as streets, parks, and sidewalks).

To be clear, Plaintiff does not allege he was arrested. Plaintiff alleges he was unreasonably seized by "Defendant Jansen's threat of arrest, coupled with his baseless assertion that Mr. Kelly was trespassing." (Response (Doc. 63) at 7.) The Complaint does not include any facts to support the conclusory allegation that he was detained in violation of the Fourth Amendment. Detention occurs when a person reasonably believes he is "not free to leave"[4] or under *Terry*,[5] which allows police to detain individuals for short time periods for the purpose of investigating possible criminal activity. The adverse government action alleged in this case is that Defendant Jansen threatened to arrest him for trespassing, chilling his First Amendment right to be on the public sidewalk video recording the flooding occurring on an adjacent property under construction by Richmond American Construction. While Plaintiff does not allege a Fourth Amendment

---

[4] *See Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (indicating that a seizure occurs when a reasonable person would believe that he or she is not "free to leave.").
[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

illegal detention claim, the Fourth Amendment standard, nevertheless, applies to determine the reasonableness of the threat to arrest the Plaintiff for trespass.

Only "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983," *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988), and the existence of probable cause vitiates any claim of unlawful arrest, *Pierson v. Ray*, 386 U.S. 547 (1967), and acts as a complete defense to liability of an officer under § 1983, *Owen v. City of Independence*, 445 U.S. 622, 637 (1980). In other words, if there was probable cause to arrest Plaintiff for trespass, Defendant Jansen has a complete defense as a matter of law to liability for violating Plaintiff's Fourth Amendment right to be free from the threat of arrest for trespass without probable cause and for violating his First Amendment right to be free from such chilling conduct. The Court applies the Fourth Amendment standard applicable to all seizures of the person, even detentions falling short of traditional arrest, *United States v. Mendenhall*, 446 U.S. 544, 551 (1980), and considers whether there was probable cause to arrest Plaintiff for trespass or if not, whether Defendant Jansen reasonably believed there to have been probable cause. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).

### a.  Probable Cause

Probable cause exists when, under the totality of circumstances known to the arresting officer, "a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir.2006); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (examining the events leading up to the arrest, viewed from the standpoint of an objectively reasonable police officer, to determine probable cause) (internal quotation omitted)). In other words: "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Probable cause is not a high bar. *Kaley v. United States*, 571 U.S. 320, 338–39 (2014). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The Supreme Court has repeatedly declined to require the use of adversarial procedures to make probable cause determinations. *Kaley*, 571 U.S. at 338. In *Kaley*, the Court explained that is why grand jury determinations of probable cause are made without an adversary hearing. *Kaley*, 571 U.S. at 320 (citing *Gerstein v. Pugh,* 420 U.S. 103, 121 (1975)). It is and "'has always been thought sufficient to hear only the prosecutor's side.'" *Id.* (quoting *United States v. Williams*, 504 U.S. 36, 51 (1992). Similarly, the government is not required to present exculpatory evidence, *id.* (citing *Williams*, 504 U.S. at 51, and introduction of hearsay evidence alone is allowed, *id.* at 338 (citing *Costello v. United States*, 350 U.S. 359, 362-364 (1956)). The reasoning, explained by the Supreme Court, is that probable cause serves only a gateway function: "Given the relatively undemanding 'nature of the determination,' the value of requiring any additional 'formalities and safeguards' would '[i]n most cases ... be too slight.'" *Kaley*, 571 U.S. at 338-339 (quoting *Gerstein*, 420 U.S. at 121–122).

The test for probable cause is not reducible to "precise definition or quantification." *Pringle*, 540 U.S. at 371. "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Florida. v. Harris*, 568 U.S. 237, 243–44, (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). All that is required is the kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act." *Gates,* 462 U.S. at 238.

**2. Clearly Established Law for Trespass**

Under Arizona law, "a person commits criminal trespass by "knowingly entering or remaining unlawfully on any real property after a reasonable request to leave by a law

enforcement officer, the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry." A.R.S. § 13-1502.

Here, Defendant Jansen was responding to a 911 call and had to make a probable cause determination based on the information available to him: the 911 caller, Richmond American Construction, told Deputy Jansen that the sidewalk was private property, a development under construction by Richmond American Construction, and Jansen called the County's attorney, who backed up that assertion. The Court focuses on the objective legal reasonableness of Jansen's alleged conduct in this situation, *Saucier*, 533 U.S. at 201, and asks whether it would be clear to a reasonable public official that this conduct was an unlawful violation of the Fourth and Fifth Amendments, *id.* Defendant Jansen, the moving party, must show he is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). However, "[i]t is the plaintiff who bears the burden of showing the rights allegedly violated were 'clearly established.'" *Shafer v. County of Santa Barbara,* 868 F.3d 1110, 1118 (9th Cir. 2017).

The Supreme Court "has repeatedly told courts—*and the Ninth Circuit in particular*—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 103 (2018) (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 612-613 (2015)) (emphasis added). The Court has mandated that the "clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (finding that the Ninth Circuit erred when defining the right, generally, as "the right to be free from excessive force.").

Recently explained in *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023), "clearly established" is a demanding standard that protects "all but the plainly incompetent or those who knowingly violate the law." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62 (2018) (quoting *Malley*, 475 U.S. at 341). "Although a case directly on point is not necessarily required, a rule is only clearly established if it has been settled by controlling authority or a robust consensus of cases of *persuasive authority* that clearly prohibits the

officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson*, 71 F.4th at 697 (cleaned up) (emphasis added).

These Supreme Court guideposts have special relevance in this case because the Court considers the defense of qualified immunity on the pleadings, not on summary judgment. In balancing the competing interests of the parties, the Court must allow the case to go forward if the Complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right. So cautioned, the Court turns to the purely legal question of whether the law was clearly established in 2021 to have given "fair warning"[6] to Defendant Jansen that probable cause did not exist to support an arrest for trespass, with which he threatened Plaintiff in an alleged effort to chill Plaintiff's exercise of his First Amendment rights.

"[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (cleaned up). Case law, in factual terms, may not be "directly on point," but it must be close enough to have put "the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (case law does not need to be identical, but must show that in light of preexisting law the unlawfulness is apparent). The Court considers "whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case*." Loftus v. Clark–Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). To make this showing, the Plaintiff may point to prior case law from the Supreme Court of the United States, the Ninth Circuit, or the highest court in the relevant state) that is "materially similar." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (*citing Jones v. Franse*, 857 F.3d 843, 851–52 (2017)).

---

[6] *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010) (explaining "task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful.") (quoting *Flores v. Morgan Hill Unified Schs*., 324 F.3d 1130, 1136–37 (9th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

The Plaintiff argues: "The Ninth Circuit has consistently held that public sidewalks are quintessential public forums where First Amendment rights are robustly protected (*Hague v. CIO*, 307 U.S. 496 (1939); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n.,* 460 U.S. 37 (1983))." (Response (Doc. 63) at 4.) He challenges Defendant Jansen's reliance on the allegedly baseless statement that the sidewalk was private from Richmond American Construction because "officers must exercise independent judgment and cannot blindly rely on unverified claims when constitutional rights are at stake. *Id.* (citing *Ballentine v. Tucker,* 24 F.4th 54, 61 (9th Cir. 2022)). Plaintiff concludes: "Arbitrary removal from public property without verification of the property's status constitutes a violation of substantive due process. *Id*. at 5 (quoting *DeBoard v. Town of Haughton*, 940 F.3d 529 (5th Cir. 2019)[7]). Plaintiff does precisely what he may not do. He attempts to define "clearly established law" with a high level of generality. Clearly established law must be particularized to the facts of the case.

Turning to the question of whether Defendant Jansen has shown he is entitled to judgment as a matter of law, he points out that there is no allegation he knew the sidewalk was public, (MJP (Doc. 43) at 7), and argues that he reasonably concluded there was probable cause to arrest Plaintiff under Arizona's trespass law because the owner in control of the property, Richmond American Construction, said the sidewalk was private and requested that Plaintiff leave the property. A.R.S. § 13-1502. "Officers do not need to pursue further justification for enforcing trespass law on a sidewalk beyond an allegation by a property owner and reasonable information that the property was private." (MJP (Doc. 43) at 7 (citing *Bodzin v. City of Dallas*, 768 F. 2d 722, 724-725 (5th Cir. 1985), *see also Skovgard v. Pedro*, 448 Fed. Appx. 538, 546 (6th Cir. 2011) (same); *Kelly v. Myler*, 149 F. 3d 641, 646-647 (7th Cir. 1998) (same)). Defendant argues that "[once an officer has sufficient cause to believe a property is private, and that an individual on that property is trespassing, the officer has no further duty to investigate." *Id.* (citing *Spears v. City of Tucson*, 125 F. Supp. 3d 903 (D. Ariz. 2015) (officers did not violate Plaintiff's First

---

[7] The Court has been unable to locate this case using this citation.

- 16 -

Amendment rights when they threatened to remove the plaintiff from public property that they reasonably believed to be private at the time)).

"To determine whether a right was clearly established, a court turns to the Supreme Court and Ninth Circuit law existing at the time of the alleged act," *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010). None of the cases relied on by the Defendant above are from the Supreme Court. Two of the cases are out-of-circuit, and the third is a district court decision from this circuit. In the Ninth Circuit, a court must be "hesitant to rely on district court decisions" as clearly establishing law for purposes of qualified immunity. *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021). "[A]s the Supreme Court has pointed out, district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards, because a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Id.* (alterations and internal quotation marks omitted).

In the Ninth Circuit, it is, however, clearly established that officers are entitled to rely on legal advice, which "while it will not automatically insulate an officer from liability, 'it goes far to establish qualified immunity.'" *Ewing v. City of Stockton*, 588 F. 3d 1218, 1231 (9th Cir. 2009) (quoting *Kijonka v. Seitzinger*, 363 F. 3d 645, 648 (7th Cir. 2004)). "Although 'not conclusive on the issue of qualified immunity,' where an official consults with an attorney, 'it is evidence of good faith,' and in a 'slim' case, 'tips the scale in favor of qualified immunity.'" *Id.* at 1231 (officers entitled to qualified immunity for false arrest because they relied on district attorney's advice to add murder charge); *see also Los Angeles Police Protective League v. Gates*, 907 F. 2d 879 (9th Cir. 1990) (supervisors entitled to qualified immunity because they sought and followed advice of city attorney).

This is precisely what Plaintiff alleges happened in this case. "Defendant Pima County attorney SEAN HOLGUIN, the legal advisor hired by Pima County, "was contacted and represented the sidewalk was private property…" *Supra* at 1-2 (quoting Complaint (Doc. 1) ¶ 4, 10, 15). Even if Plaintiff had shown clearly established law exists

1 precluding Defendant Jansen from relying on an unverified assertion by a property owner that a sidewalk is private property, Defendant goes a long way in establishing his entitlement to qualified immunity because he based his probable cause determination on legal advice from the County's attorney, who backed up the property owner's claim. This tips the scale in favor of qualified immunity on the Fourth Amendment claim.

This Court determines that no preexisting law at the time of the alleged trespass provided Defendant Jansen with "fair warning" that it was unlawful[8] to rely on legal advice from the County's attorney to determine whether there was probable cause to believe the Plaintiff was trespassing on a private sidewalk. Under preexisting law at the time of the alleged trespass, specifically *Ewing*, Jansen would not have had "fair warning" that it was "unlawful" to rely on advice from the County's attorney regarding the private nature of the sidewalk to establish probable cause for trespassing. Under *Ewing,* the law is to the contrary: relying on the County attorney's advice was lawful.

In the Ninth Circuit, the First Amendment is not a license to trespass. *See Dietemann v. Time, Inc*., 449 F. 2d 245, 249 (9th Cir. 1971) (holding magazine may not use the First Amendment as license to trespass by electronic means into another's home); *Adderley v. Florida*, 385 U.S. 39, 47–48, (1966) (explaining trespass statute prohibiting demonstrations on private jailhouse grounds did not violate the First Amendment); *Hudgens v. NLRB*, 424 U.S. 507, 520–21 (1976) (finding no First Amendment right to enter a privately-owned shopping center to picket for a strike against company).

Defendant is correct: "It is well established that citizens are not entitled to exercise their First Amendment rights whenever and wherever they wish." (MJP (Doc. 43) at 9.) "Indeed, there is no First Amendment right to access private property for expression." *Id.* In short, the First Amendment does not trump private property rights. No reasonable police officer would believe arresting a person for trespassing on private property would violate the First Amendment. Because the Court finds that Defendant Jansen reasonably concluded there was probable cause to believe Plaintiff was trespassing on a private sidewalk, he did

---

[8]*Supra* n. 6.

not violate the First Amendment by threatening to arrest Plaintiff for trespass.

Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341, 343. The accommodation for reasonable error exists here because as a matter of clearly established law, every reasonable official facing the factual scenario as alleged in the Complaint would NOT have understood it to be a violation of the Fourth Amendment to determine probable cause existed to arrest Plaintiff for trespass or that it would violate the First Amendment to threaten to arrest the Plaintiff for trespassing on private property.

### III. Conclusion

The Court grants Defendant Jansen's Motion for Judgment on the Pleadings based on qualified immunity. Plaintiff fails to show any clearly established law that would have given Defendant Jansen fair warning that he violated the Fourth Amendment when he based his probable cause determination that Plaintiff was trespassing on private property on advice from the County's attorney that backed up the property owner's assertion the sidewalk was private property. The Plaintiff, likewise, fails to show clearly established law that a First Amendment claim may be made by a person who law enforcement officers reasonably believed to be trespassing on private property. In contrast, Defendant Jansen has shown that he is entitled to judgment as a matter of law because it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations made in the Complaint. It is equally clear that no amendment can be made to the Complaint to cure the pleading defect.

**Accordingly,**

**IT IS ORDERED** that the Motion for Judgment on the Pleadings (Doc. 43) is GRANTED.

/////
/////
/////
/////

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly and close this case.

Dated this 18th day of March, 2025.

Honorable Cindy K. Jorgenson
United States District Judge